IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

LA TIDTUS JONES                                                                                   PLAINTIFF

v.                                                                                          No. 2:12CV32-A-V

CITY OF ROSEDALE, ET AL.                                                                    DEFENDANTS

REPORT AND RECOMMENDATION

On June 4, 2012, plaintiff La Tidtus Jones, an inmate in the custody of the Bolivar County Regional Correctional Facility with inmate number 162333, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether there exists a justiciable basis for his claim filed under 42 U.S.C. § 1983. A plaintiff's claim will be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1]

**Allegations**[2]

On February 1, 2010, La Tidius Jones kicked down the door of the house he shared with his wife and loudly confronted her in the bathroom – loudly enough that the neighbors heard and called the police. He was armed with a pistol. He was yelling at her about driving recklessly.

---

[1] 28 U.S.C. § 1915(g).

[2] Mr. Jones' included well over 100 defendants in his complaint, which was long, rambling, and full of inconsistencies. For example, in several places Mr. Jones alleges that he had a pistol during his standoff with the police; in others, he alleges that only his wife had the pistol; yet, in others, he alleges that there was no pistol at all. The court has distilled the complaint as best it can under the circumstances.

The police arrived – and obviously knew about Mr. Jones' mental state, as it appears that they arrived with a SWAT team. Jones told the police to exit his home, that they had no right to enter, and that he and his wife were just "having a conversation," albeit a loud one.

Jones' wife (alone in the bathroom with her armed, seething husband), told the police to leave – that she and her husband were just having a disagreement. The police repeatedly urged Jones to exit the bathroom, and Jones repeatedly refused. The police brought in friends, relatives, and neighbors in an attempt to talk Jones down and get him to leave the bathroom peaceably, but he refused – repeatedly demanding that the police leave his home. (He frequently mentions being "angry and afraid" in his complaint).

The plaintiff yelled, "You're going to cause someone to get hurt," that "I have a right to protect myself," and because the police were in his home without permission, "I will kill your ass before you get the chance to kill me." Officer Gilmore responded, "You are not going to make it out alive talking the way you are and running off at the mouth." The plaintiff cursed at the officers during a 45-minute standoff. Officers searched the rest of the plaintiff's home during the standoff.

The officers brought in Jones' pastor in another attempt to defuse the escalating confrontation. Jones said that he refused to be arrested for arguing with his wife in his own home – and that he could stay in his bathroom day and night if he wanted. He then told his pastor that the pistol was in possession of his wife, not him – and that he was on federal probation and was prohibited from possessing a firearm.

About thirty minutes later, the police brought in "Yam" Landers Burrell, who told Jones, crying, "I am here because I am your friend and to make sure that you don't get yourself hurt or

anyone else hurt. The officers told me that you had killed your wife and kids." Jones told Burrell to leave because he had not hurt anyone – that the officers were making up lies so they would have an excuse to hurt him. The standoff continued another 20 minutes.

Then the officers had Jones' crying fifteen-year-old daughter beg him to come out – that the place was surrounded, that he would never get away, and that the police told her that he had killed Loretta (his wife and, presumably, her mother) – and that she loved him.

Jones became *very* angry that the officers had put his daughter in harm's way, and demanded that the police call in the FBI to negotiate. The police brought in others in a vain effort to calm Jones down, but he sent all of them away.

Jones stayed locked in the bathroom until 2:30 a.m. the next day. An FBI agent asked Jones for his cell phone number and asked if he'd be willing to talk. Jones gave them his number and demanded to speak with the United States Attorney. The FBI agent arranged it, and the AUSA[3] spoke with Jones. Jones wanted an agreement that he would not be prosecuted in federal court for acts he claims he did not do. The AUSA asked for time to discuss the matter with the District Judge. Jones asked for water, and the AUSA ensured that he got some.

Jones received a contract and agreed to leave his home with his wife. Then he refused to come out until the officers gave him something to eat. He got food. Then he sent Loretta out.

Finally, Jones opened the bathroom door, sat on the edge of the tub with his hands up, and noticed that he was in the sights of multiple rifles. Charlie Gilmore entered the bathroom, snatched Jones up, threw him to the ground, and covered him with a blanket. He was taken

---

[3] It is not clear from the pleadings whether Jones spoke to an actual Assistant United States Attorney.

-3-

straight to the jail and locked up. Jones asked for treatment for his hand and shoulder, which had been injured during the takedown, but he received none at the time. The police asked for a statement, but Jones refused. A judge presided over an initial appearance at the jail and set Jones' bail at $100,000.00.

## Discussion

The court has identified the following claims in the instant case: (1) excessive force during Jones' arrest, (2) entry into his home without a warrant, (3) racial discrimination, (4) denial of adequate medical care, (5) arrest without probable cause, and (6) denial of reasonable bail. None of these allegations state a claim of constitutional magnitude; as such, this case should be dismissed.

**Entry into Jones' Home Without a Warrant and Arrest Without Probable Cause**

Jones admits in his complaint that he and his wife were having an extended shouting match in their bathroom – one heated enough that their neighbors called the police, who arrived with a SWAT team. This easily qualifies as an exigent circumstance (an emergency) sufficient to dispense with the requirement of a warrant. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In addition, Jones engaged in a two-day standoff with the police in which he holed up in his bathroom and held his wife at gunpoint. These facts establish probable cause to arrest Jones. These claims are frivolous and should be dismissed.

**Racial Discrimination**

Though he makes the bald assertion that he was the victim of racial discrimination, he has not alleged a single fact supporting this allegation. As such, this claim should be dismissed

**Denial of Adequate Medical Care**

Jones alleges that one of the defendants used excessive force to arrest him after his two-day standoff with police – injuring his shoulder and hand in the process. He testified at the *Spears* hearing, however, that he received an x-ray of his shoulder and treatment for his hand about five days after his arrest. His hand was placed in a cast, which was later removed. Though he complained pain in his hand after removal of the cast, medical personnel examined his hand and could not find anything wrong with it. He has been treated for the pain in his hand with 500 mg of naproxen sodium and steroids. These facts do not state a claim for denial of adequate medical care.

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a

court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, Jones was treated for his injuries; he simply disagrees with the treatment. This fails to state a claim upon which relief could be granted, and these allegations should be dismissed for that reason.

**Denial of Reasonable Bail**

Jones alleges that the bail set by the state court ($100,000.00) was not reasonable. This claim is without merit. One of the factors a court must consider in setting reasonable bail is whether the defendant might be a danger to the community. Jones had engaged in an armed standoff with the police, holed up in his bathroom with his wife. The police were concerned that he might have injured or killed members of his family. As revealed in Jones' own pleadings in this case, he was mentally unstable at the time of the standoff. By any rational measure La Tidtus Jones was a danger to the community, and this court believes a bond of $100,000.00 was reasonable under the circumstances – even when considering *only* the danger Jones posed to the community. This claim should be dismissed as frivolous.

**Excessive Force**

The final issue to consider in this case is Jones' contention that Charlie Gilmore used excessive force against him when he finally surrendered to the police. Jones was sitting on the tub in his bathroom, hands above his head, when Gilmore entered , snatched Jones to the floor by his arm, threw a blanket over him, and fell on top of him. Jones argues that this force was excessive, as he was not in a physical position to pose a threat to police. Jones has not, however, considered the entire picture. He had told the police for two days that he and his wife had a pistol inside the bathroom with them. His wife had exited without a pistol, and he had not turned it over before he surrendered to the police. Put simply, the police did not know where the gun was, and Jones – an unstable man – could have had access to it. Gilmore rapidly subdued Jones in a manner rendering him unable to reach a firearm – and covered his eyes so that he could not aim a pistol at anyone. Based on the allegations in Jones' complaint, Gilmore's actions were a reasonable use of force under the circumstances. This claim is without merit and should be dismissed.

In sum, all of the plaintiff's claims are without merit and should be dismissed, and all defendants should dismissed with prejudice from this case.

**Handling of Objections, Acknowledgment of Receipt**

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on

grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*)(citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of this date. *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

Respectfully submitted this 13th day of June, 2012.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE